**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MANCO et al, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 18-5872 |
| v. | : | **OPINION** |
| THE CUMBERLAND MUTUAL FIRE INSURANCE COMPANY et al | : : | |
| Defendants. | : | |

This matter comes before the Court on Defendant Cumberland Mutual Fire Insurance's Motion for Summary Judgment [Dkt. No. 28]. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court will deny Defendant's Motion for Summary Judgment.

I.  Background

This case concerns insurance coverage for water damage to Mrs. Marian Manco's ("Plaintiff")[1] Sea Isle City property, ensuing from a frozen pipe in December 2017. Plaintiff maintains a dwelling in Sea Isle City, New Jersey, which she and her late husband had built in 1970 (the "Property"). [Dkt. No. 33-22 ("Pl. SMF") at ¶ 1]. The Property is currently a two story duplex. Plaintiff and her family use the first floor as a summer home, and rent the second floor. (Id. at ¶ 2). For approximately sixteen (16) years, Fred Marini ("Mr. Marini") handled the plumbing needs for Plaintiff's Property, including winterization of the dwelling. (Id. at ¶ 3). Mr. Marini is a master plumber and

---

[1] The second plaintiff in the case is the Manco Family Trust.

1

owner of Marini Plumbing & Heating, LLC, both are Defendants in this matter. (Id. at ¶ 19; Compl. at ¶ 5).

Plaintiff's son, Louis Manco ("Mr. Manco"), and his wife have been assisting Plaintiff to open and close the Property for about thirteen years. (Pl. SMF ¶ 15). When Mr. Manco closes the Property in the fall for the winter, he "checks to be sure the circuit breakers are all on and operating with the exception of the hot water heater for which, pursuant to his father's instructions, that circuit is turned off; brings in all of the deck furniture, unhooks the hose at the bottom of the outdoor shower and drains it; places trash cans in the shower; puts the gas grill in the shed and locks it, unplugs appliances and removes the food and packs it for home, and unplugs the freezer in the shed and removes the food from that appliance." (Id.). "The home has baseboard heating throughout the house. There are thermostats in every room." [Dkt. No. 28 ("Def. SMF") at ¶ 21]. As in previous years, Mr. Manco helped Plaintiff to close the Property on or about October 1, 2017. (Pl. SMF ¶ 18). When closing the Property that day, Mr. Manco set all thermostats to the "low" setting. "Low" is less than 40 degrees Fahrenheit, but is not marked with a number. (Def. SMF ¶¶ 21-22). There is no on/off switch on the Property's thermostats. (Id. at ¶ 22).

"Mr. Marini estimates that he has been winterizing the Manco property in Sea Isle City since at least 2007." (Pl. SMF ¶ 25). Mr. Marini testified that he required two weeks' notice when requiring seasonal water turn on and winterization; some of Plaintiff's invoices reflected the same. (Id. at ¶ 35). To request winterization, a customer has to call him and leave a message on his land line. Customers could leave messages with his message service, Big Messages, which he "personally checks . . . and, depending on the time of year, checks . . . either every couple of hours (like in September when his

first deposition took place) and at busy times . . . hourly." (Id. at ¶ 23). When Mr. Marini checks his messages, he records them into a log reflecting the date of the call and then puts the winterization on the schedule. (Id. at ¶ 37). Clients normally call Mr. Marini just once to request winterization, but some customers call twice to confirm the winterization is completed. (Id. at ¶ 32).

According to Mr. Marini, "'winterize' meant to turn the water off at the street, enter the client's house, drain all the water pipes, water heater and toilets, put antifreeze in toilets and drains, dishwasher and washing machine, get all the water out and for what water he cannot remove he adds antifreeze." (Id. at ¶ 27). Plaintiff called Mr. Marini's phone on November 27, 2017 and left a message requesting winterization of the Property. (Id. at ¶ 7). Mr. Marini received this message later the same day. (Id. at ¶ 9). Plaintiff also placed two follow-up calls to Mr. Marini "to be sure that he got her prior messages to winterize." (Id. at ¶ 11).

Ultimately, Mr. Marini did not winterize Plaintiff's Property in 2017. (Id. at ¶ 39). On December 18, 2017, Mr. Marini was notified that water was coming from Plaintiff's Property, he subsequently advised Plaintiff that a pipe froze and created water damage. (Id. at ¶ 42). The Cumberland Mutual Fire Insurance Company ("Cumberland" or "Defendant") insured Plaintiff's Property. (Compl. ¶ 4). Plaintiff notified Cumberland about the loss and damage to its Property. (Id. at ¶ 13). Soon thereafter, Cumberland denied Plaintiff's Property loss claim by letter dated January 2, 2018. [Dkt. No. 28-1 at Ex. D]. "The denial letter indicated that 'the cause of the damage was freeze in a plumbing supply line causing a failure in the line, which resulted in leakage of water. Heat was turned off in the building at the time of the incident. Additionally, the

plumbing system was not winterized." (Def. SMF at ¶ 17). Cumberland denied coverage pursuant to the freeze-up policy exclusion. (Id.).

Plaintiff filed a Complaint with this Court on April 10, 2018 asserting a claim against Cumberland for Breach of the Insurance Policy (Count I) and against Mr. Marini for Negligence (Count Two). [Dkt. No. 1]. During this litigation, Cumberland retained engineering consultant, Terrence J. Fearon ("Mr. Fearon") from Affiliated Engineering Laboratories "to determine the ambient temperature of the subject thermostat when set to the 'low' setting". (Id. at ¶ 25). In an effort to do so, Affiliated Engineering Laboratories inspected a potable water supply pipe at Plaintiff's Property that had failed. Defendant's experts later "removed and took custody of a remote thermostat . . . for additional testing." [Dkt. No. 28-1, Ex. G]. "The subject thermostat was recovered from a 2nd floor bathroom, which was located directly below the failed potable water supply pipe." (Id.). On April 18, 2019, Mr. Fearon conducted laboratory testing of that thermostat at Affiliated Engineering Laboratories' facility. (Id.). "The purpose of the April 18th laboratory test was to determine the required ambient temperature that would cause the subject thermostat to call for heat when it was set to the 'LOW' dial setting." (Id.). "[Mr.] Fearon concluded that if the subject thermostat was set to 'low,' then it would not maintain an ambient temperature above freezing in the space that it was serving." (Def. SMF at ¶ 31).

Plaintiff also retained an expert, William H. Green III, P.E. Mr. Green prepared two reports, an initial report and a rebuttal report of Defendant's Expert. [Dkt. Nos. 33-19, Ex. R; 33-20, Ex. S]. Plaintiff engaged Mr. Green to investigate the water damage to the Property at issue. He was asked to "inspect the premises and review records listed to determine whether and when freezing conditions caused the plumbing discharge

4

discovered December 18, 2017." [Dkt. Nos. 33-19, Ex. R]. Mr. Green concluded, based on weather data, that the "day of most likely freezing failure was December 15, 2017." (Id.). Mr. Green also reviewed Mr. Fearon's report, in addition to two reports from P.E.'s affiliated with National Forensic Consultants. Mr. Green subsequently executed a rebuttal report in which he finds support that the electricity in Plaintiff's Property was on in December 2017 and notes that "none of the plumbing froze and failed anywhere in the second floor unit including the bathroom or in the kitchen nor were there any failures due to freezing of plumbing in the first floor unit. The failure was in the attic above the second floor." [Dkt. Nos. 33-20, Ex. S].

Defendant Cumberland now moves for summary judgment as to Count One [Dkt. No. 28], and the motion has been fully briefed. As discussed herein, the Court will deny the motion because a reasonable jury could find that Plaintiff exercised necessary and ongoing care to maintain heat in her property.

## II.     Summary Judgment Standard of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

5

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

III.     Analysis

Defendant Cumberland argues that Plaintiff is barred from coverage under her Cumberland insurance policy for failure to maintain adequate heat in her property. [Dkt. No. 28]. In response, Plaintiff contends that she exercised necessary and ongoing care to maintain adequate heat in the dwelling, and to drain the water from the plumbing and appliances and shut off the water to the property. [Dkt. No. 33]. Mr. Marini and Defendant Marini Plumbing and Heating agree with Plaintiff and submit that Defendant Cumberland's Motion for Summary Judgment should be denied because there exists a genuine issue of fact as to whether Plaintiff and her son complied with Cumberland's policy provisions. [Dkt. No. 34].

Under New Jersey law, insurance contracts are subject to special rules of interpretation because they are contracts of adhesion. Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001) (citations omitted). "If the policy language is clear, the policy should be interpreted as written, [but][i]f the policy is ambiguous, the policy will be construed in favor of the insured." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006) (quoting Nav–Its, Inc. v. Selective Ins. Co. of Am., 869 A.2d 929, 933 (N.J. 2005). When there is ambiguity, the insurance policy should be interpreted to "comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Zacarias, 775 A.2d at 126.

New Jersey courts have held that insurance policy exclusions must be narrowly construed and that the burden is on the insurer to bring the case within the exclusion. Am. Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (1998) (citation omitted). "Nevertheless, [New Jersey courts] adhere to the principle that an insurance policy

7

should generally be interpreted 'according to its plain and ordinary meaning,' so as not to disregard the 'clear import and intent' of a policy exclusion." Id. (citations omitted).

Plaintiff's insurance policy at issue, incorporates the following "Freezing of Appliances or other Equipment Exclusion" for:

> Leakage or overflow from air conditioning, heating, plumbing, or other appliances or equipment, or damage to such appliances or equipment caused by freezing that occurs while the building or any living unit within the building is unoccupied, vacant, or under construction. To the extent that coverage is provided by the applicable coverage form, <u>this exclusion is waived if necessary and ongoing care is exercised to maintain adequate heat in the building or any living unit within the building, or such appliances or equipment are drained and the water supply shut off</u>.

[Dkt. No. 28, Ex. C at Sec. I D(4) (emphasis added)].

The undisputed record provides that Mrs. Manco's property experienced water damage in December 2017 after a pipe froze and split open. Defendant Cumberland denied coverage of the Property's resulting damage due to the freeze-up policy exclusion. [Dkt. No. 28, Ex. D]. Defendant argues that the denial was proper, and summary judgment in this case is warranted because Plaintiff thought that the Property's heat was turned off, and thus, failed to properly maintain heat. [Dkt. No. 28 at p. 19].

At the outset, Plaintiff argues that the Policy exclusion is waived when Plaintiff does what is "required to be done" to prevent the freezing of her plumbing. [Dkt. No. 33 at 19]. She submits that the word "ongoing," used "in the context of Cumberland's policy, . . . is ambiguous." (Id.). In particular, Plaintiff contends that "ongoing care" paired with the word "exercised," like here, renders the question "whether Mrs. Manco used ongoing care to maintain heat **or** winterize the dwelling." (Id. at 20 (emphasis in original)). Defendant, however, argues that "[a]n insured MUST maintain adequate heat

8

in the home or have the home winterized, period;" and Plaintiff's intent to winterize her Property is therefore, insufficient. [Dkt. No. 37 at p. 6-7].

"A genuine ambiguity arises only 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Dooley v. Scottsdale Ins. Co., No. CIV.A. 12-1838, 2015 WL 685811, at *6 (D.N.J. Feb. 18, 2015) (quoting Weedo v. Stone–E–Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979)). Here, the relevant language of the freezing exclusion is not ambiguous. To maintain heat, is to "to keep in an existing state"—a task that can be "ongoing."[2] To maintain adequate heat in regard to an "exclusionary provision related to 'freezing'" means ensuring "the temperature in h[er] home remained above freezing." Dooley v. Scottsdale Ins. Co., No. CIV.A. 12-1838, 2015 WL 685811, at *6 (D.N.J. Feb. 18, 2015). Drained, however, is past tense, and shut off, used in this context, also indicates past tense. Accordingly, the intent of providing waiver where "appliances or equipment are drained and the water supply shut off," is to have the insurer complete winterization. Additionally, the policy language would be unworkable as written to find waiver where: "necessary and ongoing care is exercised to . . . such appliances or equipment are drained and the water supply shut off."

Therefore, according to the plain terms of the agreement, the exclusion will not preclude coverage when (1) the insured exercised continuing care required to maintain adequate heat in the building or any living unit within the building; or (2) the insured winterized the property subject to the policy. As such, "ongoing" efforts to winterize the property are insufficient to trigger the exception to the policy's exclusion. It follows that

---

[2] See "Maintain." *Merriam-Webster.com*, MERRIAM WEBSTER (last visited May 5, 2020), https://www.merriam-webster.com/dictionary/maintain?src=search-dict-hed

the issue before the Court is whether a genuine dispute of fact remains as to whether the amount of heat in the Property was adequate for the building or any living unit within it. The Court finds that such a genuine factual dispute exists.

Here, Defendant Cumberland submits that Mrs. Manco "admits" that she failed to properly maintain heat. Mrs. Manco's testimony provides that she did not "use" heat while she occupied the Sea Isle dwelling. (Pl. Dep. 50:19-21). The parties agree that Mrs. Manco only utilized the Property in the summer months, during which she would not need heat. Plaintiff also testified that she thought her heat was turned off when she left for the season in October 2017. (Id. at 51). However, for thirteen (13) years, Mrs. Manco's son assisted his mother in closing the property for the season every fall. (Pl. SMF ¶ 16). Although Plaintiff <u>thinks</u> that her son would turn off electricity, he testified that he "absolutely" never turned off the circuit breaker in all the years he was assisting in the closing of the property. (Louis Manco Dep. 18:7-11). "Unless and until the electrical source to the home is turned off the thermostats are on and set on low as there is no 'off' setting." (Pl. SMF ¶ 17). In October 2017, Mr. Manco and his wife "checked all the thermostats, make sure they are on low, both floors." (Id. at 36:18-25). In fact, Defendant ultimately does not dispute that the thermostats in Plaintiff's seasonal dwelling were set to "low" when Mr. Manco closed the Property with Plaintiff in October 2017. (Def. Resp. SMF ¶¶ 16, 17).

In that regard, Defendant Cumberland contends that <u>even if</u> the heat was "on," Plaintiff fails to show adequate heat was maintained because according to its expert, Mr. Fearon, if the subject thermostat was set to low "it would not maintain an ambient temperature above freezing in the space that it was serving." [Dkt. No. 28-1, Ex. H]. Mr. Fearon reached this conclusion after he conducted a controlled experiment with one of

10

Plaintiff's thermostats, taken from her Property. (Id.) The experiment involved putting the thermostat on the "low" setting and placing it into a temperature chamber. (Id.). According to the Report, "temperature inside the chamber was then lowered until the digital multimeter indicated that the thermostat's electrical contacts had closed. The temperature at closing time was recorded from the sensors positioned on either side of the thermostat and then the temperature in the chamber was raised until the electrical contacts opened." (Id.). During the experiment, the heat was triggered on when the temperature in the chamber reached between 1.0 degree and 7.1 degrees Fahrenheit. (See Id. at Laboratory Test Result's Chart).

Plaintiff disputes Defendant's expert findings and denies that the "testing was valid or reliable." [Dkt. No. 33-21]. Plaintiff's own expert makes a number of "preliminary remarks" about the test on Plaintiff's thermostat. [Dkt. No. 33-20, Ex. S]. First, there is no indication whether Mr. Fearon tested the thermostat at other, higher, settings to ensure the thermostat was functioning as manufactured. (Id. at 1-2). Second, the test took place with only one of the thermostats in the second floor unit, and was conducted approximately 16 months after the loss. (Id. at 2). Plaintiff has thermostats in every room of the house. Moreover, upon review of electric utility bills and records from Atlantic City Electric, Mr. Green found that the electricity in the Property was on in December 2017 and "would be adequate to maintain a temperature above freezing in the unit." (Id. at 4).

Importantly, the policy exclusion is waived if necessary and ongoing care is exercised to maintain adequate heat in the building <u>or any living unit within the building</u>. [Dkt. No. 28-1, Ex. D]. Plaintiff's expert reported that "none of the plumbing froze and failed anywhere in the second floor unit including the bathroom or in the

11

kitchen nor were there any failures due to freezing of plumbing in the first floor unit. The failure was in <u>the attic</u> above the second floor." [Dkt. Nos. 33-20, Ex. S (emphasis added). The attic "was not in the heating zone of the house." (<u>Id.</u> at 1).

Viewing these facts in the light most favorable to Plaintiff, the record demonstrates a genuine dispute as to the adequacy of the heat maintained in the Property's living units in December 2017. The evidence in the record provides that the electricity in Plaintiff's dwelling was on, that all thermostats were on, and that those thermostats were set to "low." To be sure, there is no number associated with the "low" setting on Plaintiff's thermostat, rather the low setting was "less than 40." (Louis Manco Dep. at 22:9-13). While Defendant's engineer concludes such a setting is insufficient to sustain above freezing temperatures, Plaintiff directly disputes such finding. She supports her position that she did what was necessary to maintain above freezing temperatures with her own expert report. "[O]ur jurisprudence does not require the summary judgment opponent to match, item for item, each piece of evidence proffered by the movant, but rather he or she must only exceed the 'mere scintilla' standard." <u>Rossi v. Standard Roofing, Inc.</u>, 156 F.3d 452 , 466 (3d Cir. 1998) (citations and some quotations omitted).

Making all inferences in favor of Plaintiff, a reasonable jury could find that in keeping to her usual routine, which did not cause pipes in either of the living units to freeze, Plaintiff demonstrates necessary and ongoing care to maintain adequate heat in the building. Accordingly, Plaintiff has sufficiently established a genuine factual dispute over coverage of her insurance claim to Defendant. Therefore, the Court will deny Defendant's Motion for Summary Judgment.

IV.     Conclusion

For the forgoing reasons, the Court will deny Defendant's Motion for Summary Judgment [Dkt. No. 28].

An appropriate order shall issue.

Dated: May 7, 2020

                                                      /s/ Joseph H. Rodriguez
                                               Hon. Joseph H. Rodriguez,
                                               UNITED STATES DISTRICT JUDGE